**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RUDOLF BOOKER and MAURICE ROBINSON,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiffs,** | : | |
| | : | **NO.  12-1528** |
| **v.** | : | |
| | : | |
| **NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a AMTRAK,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

DuBOIS, J.                                                                              July 19, 2012

**M E M O R A N D U M**

## I.      INTRODUCTION

In this employment discrimination action, plaintiffs Rudolph Booker (incorrectly identified in the caption of the Complaint as "Rudolf Booker") and Maurice Robinson allege that their employer, the National Railroad Passenger Corporation ("Amtrak"), discriminated against them in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981 ("§ 1981"); and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951 et seq.  Plaintiffs also assert claims for wrongful supervision and negligent supervision under Pennsylvania common law.

Presently before the Court is Defendant's Motion to Dismiss Plaintiffs' Complaint.  For the reasons that follow, the motion is granted in part and denied in part.

II.     **BACKGROUND**[1]

During the period of time covered by the Complaint, both plaintiffs were Amtrak

employees based out of Amtrak's Philadelphia station.  (Compl. ¶¶ 2, 3.)  Plaintiffs are African-

American males.  (Id.)

     A.     Employment Background of Booker

Booker began working as a trackman at Amtrak in 1997.  (Id. ¶ 9.)  He has worked in

various positions since then, including as a "welder helper, welder, truck driver[,] and foreman."

(Id.)  "He has been a qualified foreman for approximately 10 years and passed the supervisor test

in 2009 qualifying to be a supervisor."  (Id.)  Booker has "repeatedly" applied for supervisor

positions "up to the present time" but has not received any interviews.  (Id.)

     B.     Employment Background of Robinson

Robinson began working as a trackman at Amtrak in 1999.  (Id. ¶ 19.)  He has worked in

various positions since then and, on May 4, 2009, was promoted to become a Track Supervisor.

(Id.)  "At that time he was the only African-American supervisor in System Production in

AMTRAK's Eastern Corridor and the only African-American supervisor on AMTRAK property

with the exception of an African-American supervisor in Washington, D.C."  (Id.)

Robinson avers that defendant's policies and practices have prevented him from

obtaining "appropriate positions" for which he has applied.  (Id.)  He cites, inter alia, (1) an

attempt by Amtrak management in 2005 and 2006 to prevent Robinson from obtaining a "spiker"

position, (id. ¶ 24(b)); (2) the selection in March 2008 of a less qualified white male for an

---

[1]As required on a motion to dismiss, the Court takes all plausible factual allegations
contained in plaintiffs' Complaint to be true.

assistant supervisor position for which Robinson applied, (id. ¶ 24(c)); (3) defendant's failure to interview Robinson for a supervisor position for which he applied in 2008, while interviewing two white males who were less qualified and had been involved in an accident on the job, (id. ¶ 24(d)); and (4) defendant's practice of hiring outside contractors and relegating African-American employees to less desirable positions, (id. ¶ 24(e)).

Robinson also alleges that he has experienced discrimination "in terms of employment, overtime, leave, and break practices." (Id. ¶ 25.) Managers give white employees more opportunities to earn overtime and mileage expenses and assign Robinson to undesirable shifts. (Id. ¶¶ 25(a), (c), (f), (g), (j), (k).) At unspecified times, white superiors told Robinson, "I can put you anywhere," and told him that it was their job to "f*** them (blacks) out of their money." (Id. ¶ 25(b).) Robinson also alleges that he has been "singled out and discriminated against with respect to being ordered to perform unnecessarily dangerous tasks." (Id. ¶ 27.)

C.    The July 2009 Incident[2]

In July 2009, both plaintiffs were members of "a railroad tie removal or renewal gang." (Id. ¶¶ 10, 20.) Booker was a foreman on the gang, (id. ¶ 10), and Robinson was a supervisor, (id. ¶ 20). Plaintiffs' gang consisted "solely of blacks and other minorities" and was referred to as the "black gang." (Id. ¶¶ 10, 20.) The other ten gangs in the region "are comprised of whites who receive more favorable treatment." (Id.)

Plaintiffs' gang was accused of failing to repair a track correctly. (Id. ¶¶ 11, 21.) As a

_____

[2]Several documents relating to the July 2009 incident are attached to defendant's Motion to Dismiss. The Court concludes that these documents are not "incorporated by reference or integral to [plaintiffs'] claim," Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006), and thus does not consider them at this stage of the proceedings.

result, defendant conducted disciplinary proceedings against plaintiffs in late 2009 and early 2010.  (Id.)  Plaintiffs allege that the disciplinary proceedings violated Amtrak and union rules and resulted in a punishment that "far exceeded the circumstances."  (Id.).  Both plaintiffs were "put out of service and lost [their] job status" for purposes of seniority.  (Id. ¶¶ 13, 23.)  Even before the disciplinary hearing, Robinson's supervisor position was rescinded.  (Id. ¶ 23.)  Robinson avers that "this was the first time in history of the American Railway Association Supervisors' Association that a Supervisor's job had been taken, ever."  (Id.)  The loss of job status caused plaintiffs to lose benefits, "including pay level and eligibility for overtime," and it allowed "others with less experience to move past" plaintiffs "on the list of eligible jobs with higher pay."  (Id. ¶¶ 13, 23.)

Plaintiffs allege that a systemic racial disparity in discipline caused them to receive this inappropriately severe punishment.  They describe incidents in which "white employees who committed more serious infractions resulting in serious injury and property damage received lesser disciplinary sanctions or no sanctions at all."  (Id. ¶¶ 12, 22.)  "[I]nformation emanating from an AMTRAK hearing officer" reinforces their belief that "discipline is unevenly enforced as between minorities and whites."  (Id. ¶ 14.)

Plaintiffs contend that this disparity in discipline is "a pretext deliberately calculated and effectuated to deprive [plaintiffs] of [their] status and seniority so that other white employees [are] able to get ahead of [them] and be eligible for certain jobs."  (Id. ¶¶ 13, 23.)  "Favored whites with inferior skills . . . are hired for better positions while minorities with more in the way of seniority and skills must submit to formal training and are otherwise bypassed from consideration for those better or preferred positions."  (Id.)

-4-

Plaintiffs filed charges with the Equal Employment Opportunity Commission ("EEOC") on or about August 19, 2010, "with respect to race, color[,] and retaliation with regarding [sic] past experience and continuing experience as to discriminatory practices complained of."  (Id. ¶¶ 17, 33.)  They received right-to-sue letters from the EEOC before commencing this lawsuit. (Id.)  They do not allege that they filed separate charges with the Pennsylvania Human Relations Commission ("PHRC") or that the EEOC charges were dual-filed.

## III.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss.  To survive a motion to dismiss, a civil plaintiff must allege facts that "'raise a right to relief above the speculative level.'"  Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility."  Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court used a "two-pronged approach," which it later formalized in Iqbal.  Iqbal, 556 U.S. at 679; Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Under this approach, a district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions."  Twombly, 550 U.S. at

555, 557.  Such allegations are "not entitled to the assumption of truth" and must be disregarded.

Iqbal, 556 U.S. at 679.  The court then assesses "the 'nub' of the plaintiff['s] complaint—the

well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible

claim for relief.  Id.

## IV.    DISCUSSION

Defendant seeks dismissal of all of plaintiffs' claims.  The Court begins by addressing the

merits of plaintiffs' federal claims, then addresses the extent to which those claims may be time-

barred.  Finally, the Court proceeds to plaintiffs' state-law claims.

### A.    Merits of Claims Under Title VII and § 1981

Plaintiffs assert claims under both Title VII and § 1981 based on three theories: racial

discrimination, hostile work environment, and retaliation.[3]  "[T]he substantive elements of a

claim under section 1981 are generally identical to the elements of an employment discrimination

claim under Title VII."  Brown v. J. Kaz, Inc., 581 F.3d 175, 182 (3d Cir. 2009).  The analysis set

forth in this part of the Memorandum thus applies equally to those claims. Plaintiffs also assert a

disparate impact claim under Title VII only.[4]  The Court addresses each theory in turn.

### 1.    Discrimination

To establish race-based employment discrimination under Title VII, a plaintiff must show

that the employer bore a racially discriminatory animus against the employee and that this animus

---

[3]Defendant argues in its reply brief that the Complaint does not allege a § 1981 hostile work environment claim, because the count that sets forth the § 1981 claim does not track the elements of a hostile work environment allegation.  This argument is rejected.  Plaintiffs need not recite the elements of a cause of action in their Complaint in order to state a claim.

[4]"[D]isparate impact claims are not actionable under section 1981."  Pollard v. Wawa Food Mkt., 368 F. Supp. 2d 247, 252-53 (E.D. Pa. 2005).

manifested itself in some challenged action.  Lewis v. Univ. of Pittsburgh, 725 F.2d 910, 914 (3d Cir. 1983).  In the absence of direct evidence of discrimination, a plaintiff can show discrimination using the three-prong burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997).  A plaintiff makes out a prima facie case by showing that (1) he is a member of a protected class, (2) he was qualified for the position he held, (3) he suffered an adverse employment action, and (4) the adverse action was taken "under circumstances that give rise to an inference of unlawful discrimination."  Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 1995) (citing Tx. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

Defendant argues that plaintiffs have failed to state a plausible discrimination claim with respect to (1) discipline arising from the July 2009 incident, (2) Booker's allegation that he has been wrongfully denied promotions, and (3) "[any] other alleged instance[] of discrimination." (Def.'s Mot. 8-9 & n.6.)  The Court rejects all of these arguments.

a.    July 2009 Incident

With respect to discipline arising from the July 2009 incident, defendant argues that plaintiffs' allegations do not give rise to a plausible inference that Amtrak's decisions were racially motivated.  This argument is rejected.  Plaintiffs allege that "white employees who committed more serious infractions resulting in serious injury and property damage received lesser disciplinary sanctions or no sanctions at all," and they provide specific examples.  (Compl. ¶¶ 12-13.)  Given the background of racial discrimination alleged in the Complaint, plaintiffs' allegations create an inference that the discipline arising from the July 2009 incident was based on unlawful discrimination.

-7-

b.      Failure to Promote Booker

Defendant argues that the Court should dismiss Booker's failure-to-promote claim

because "he offers no factual basis to support an inference of discrimination."  (Def.'s Mot. 9

n.6.)  This argument is rejected.  Booker alleges that he passed the supervisor test, and thus

became qualified for supervisory positions, in 2009.  (Compl. ¶ 9.)  However, despite repeatedly

applying for such positions, he has not received an interview.  (Id.)  Moreover, as of 2009, there

were only two African-American supervisors "on AMTRAK property," (id. ¶ 19), and less-

qualified white applicants were interviewed for and received supervisory positions, (id. ¶¶ 24(c)-

(d)).  These allegations support an inference that defendant failed to consider Booker for a

promotion based on unlawful discrimination.

c.      Other Instances of Discrimination

Defendant also argues, in a footnote, that "[t]o the extent that they are not time-barred,

none of the other alleged instances of discrimination rise to the level of an adverse employment

action."  (Def.'s Mot. 9 n.6.)  For purposes of discrimination claims, an adverse employment

action is "a significant change in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing a significant

change in benefits."  Durham Life Ins. Co. v. Evans, 166 F.3d 139, 152-53 (3d Cir. 1999).

This argument is rejected.  Plaintiffs allege in the Complaint that defendant took actions

such as assigning them to jobs in which they could not earn overtime, (Compl. ¶ 25), or had to

perform "unnecessarily dangerous tasks," (id. ¶ 27).  It is plausible that these actions constituted

"reassignment with significantly different responsibilities" or "decision[s] causing a significant

change in benefits."  The Court will not dismiss these claims at the present stage of the

-8-

proceedings.

### 2.     Hostile Work Environment

To prove the existence of a hostile work environment under Title VII, plaintiffs must establish that (1) they suffered intentional discrimination because of their protected status; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected them; (4) the discrimination would detrimentally affect a reasonable person of the same status in the same position; and (5) defendant is liable under the doctrine of respondeat superior.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Huston v. Proctor & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009).  Defendant argues that none of plaintiffs' allegations constitute "severe or pervasive" discrimination.

The Court will not dismiss plaintiffs' hostile work environment claim at this stage of the proceedings.  Although the bar for establishing "severe or pervasive" discrimination is relatively high, "the determination of what constitutes 'severe or pervasive' does not lend itself to a 'mathematically precise test.'" Long v. Pizza Hut (Store # 635008), No. 03-0738, 2003 WL 23019186, at *4 (W.D. Pa. Nov. 5, 2003) (quoting Harris, 510 U.S. at 23-24).  Courts in this Circuit have thus "shown a reluctance to dismiss a complaint at the 12(b)(6) stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe and/or pervasive," Grasty v. World Flavors, Inc., No. 11-1778, 2011 WL 3515864, at *9 n.2 (E.D. Pa. Aug. 11, 2011), and the Court will not do so in this case.

### 3.     Retaliation

To establish a prima facie case of retaliation, plaintiffs must show that "(1) [they] engaged in activity protected by Title VII; (2) the employer took an adverse employment action

against [them]; and (3) there was a causal connection between [their] participation in the protected activity and the adverse employment action."  Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995).

Plaintiffs allege that they complained to Amtrak management and "the appropriate unions" regarding racial discrimination.  (Compl. ¶¶ 16, 31, 32.)  This qualifies as protected activity.  See 42 U.S.C. § 2000e-3(a) (prohibiting retaliation against an employee who has "opposed any practice" made unlawful by Title VII).  However, they do not allege that defendant took any adverse action against them because of that protected activity.  They do not aver that their complaints to management and unions are linked to any adverse employment action, including the discipline arising from the July 2009 incident.  They merely allege in conclusory terms that Robinson "has been retaliated against" for his complaints, (Compl. ¶ 31), and that defendant "is responsible for retaliating against" them, (id. ¶ 43).  This is insufficient to state a claim under Twombly and Iqbal, and plaintiffs' retaliation claims are dismissed.

### 4.    Disparate Impact

Defendant argues that plaintiffs have failed to state a disparate impact claim under Title VII and that they failed to exhaust their administrative remedies with respect to that claim.

### a.    Merits

The Court rejects defendant's argument regarding the merits of plaintiffs' disparate impact claim.

"Title VII's disparate-impact provision prohibits employment practices that have the unintentional effect of discriminating based on race."  NAACP v. N. Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).  A plaintiff "establish[es] a prima facie case by

'demonstrat[ing] that application of a facially neutral standard has caused a significantly discriminatory hiring pattern.'" Id. (quoting Newark Branch, NAACP v. City of Bayonne, 134 F.3d 113, 121 (3d Cir. 1998)).

Defendant argues that plaintiffs have not challenged a specific, facially neutral employment practice.  However, plaintiffs allege that application of the facially neutral, seniority-based system for assigning positions, benefits, and promotions has a disparate impact on African-American employees.[5]  (See, e.g., Compl. ¶¶ 13-14, 19.)  The Court thus rejects defendant's argument on the merits of plaintiffs' disparate impact claim.

b.    Administrative Exhaustion

Defendant argues that plaintiffs failed to exhaust their administrative remedies with respect to their disparate impact claim because they did not mention it in their EEOC charge. This argument is rejected.

"Once a charge of some sort is filed with the EEOC, . . . the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . .'" Hicks v. ABT Assocs., Inc., 572 F.2d 960, 966 (3d Cir. 1978) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)).  EEOC charges are given a "fairly liberal construction." Schouten v. CSX Transp., Inc., 58 F. Supp. 2d 614, 616 (E.D. Pa. 1999).  In the Complaint, both plaintiffs aver that they "filed a Charge with the EEOC with respect to race, color and retaliation with regarding [sic] past experience and continuing experience as to discriminatory practices

_____

    [5]The Court notes that most of plaintiffs' allegations focus on intentional race-based discrimination.  However, plaintiffs also allege facts sufficient to make out a prima facie disparate impact claim.

complained of."  (Compl. ¶¶ 17, 33.)  Neither the EEOC charge nor the EEOC investigation is appended to the Complaint.  However, the Complaint's broad language in describing the EEOC charge is sufficient to encompass an EEOC investigation into the disparate impact claim.

>   **5.   Conclusion—Merits of Claims Under Title VII and § 1981**

In summary, the Court grants defendant's Motion to Dismiss with respect to plaintiffs' retaliation claims under Title VII and § 1981.  With respect to the merits of plaintiffs' other claims under Title VII and § 1981, the Motion is denied.

>   **B.   Timeliness of Federal Claims**

Defendant argues that plaintiffs' Title VII discrimination and hostile work environment claims and plaintiffs' § 1981 claim are "largely time-barred."  Plaintiffs respond that either equitable tolling or the continuing violation doctrine renders all of their claims timely, and, in any event, many allegations that support their claims occurred within the statutory time period.

>   **1.   Statute of Limitations**

>>   a.   Title VII

"In a deferral state such as Pennsylvania, plaintiffs must submit their discrimination charge to the EEOC within 300 days of the allegedly discriminatory employment action."  Burgess-Walls v. Brown, No. 11-275, 2011 WL 3702458, at *4 (E.D. Pa. Aug. 22, 2011).  Thus, absent tolling or application of the continuing violation doctrine, plaintiffs may recover only for discriminatory actions that occurred within 300 days before they filed their charge with the EEOC—that is, on or after October 23, 2009.

>>   b.   Section 1981

Section 1981 does not contain a statute of limitations.  However, the Supreme Court has

held that the four-year federal catch-all statute of limitations governs claims that "were made possible by" the 1991 amendments to § 1981.  Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-83 (2004).  The 1991 amendments "made possible" claims for "injury that arose after the formation of a contractual relationship between an employer and employee."  Boyer v. Johnson Matthey, Inc., No. 02-8382, 2005 WL 35893, at *4 (E.D. Pa. Jan. 6, 2005).  Claims that arise prior to the formation of a contractual relationship are subject to the most analogous statute of limitations under state law.  Id.

On the present state of the record, the Court concludes that all of plaintiffs' § 1981 claims "arose after the formation of" their contractual relationship with defendant and are thus subject to the four-year limitations period.[6]  Thus, absent tolling or application of the continuing violation doctrine, plaintiffs may recover under § 1981 only for claims that accrued on or after March 27, 2008—four years before they filed their Complaint.

### 2.    Equitable Tolling

Plaintiffs argue in their response to the Motion to Dismiss that the statutes of limitations on their claims should be equitably tolled until the date on which an Amtrak hearing officer discussed the issue of discriminatory discipline with Robinson.  Plaintiffs assert that it was only after that discussion that "the parameters of [d]efendant[']s discriminatory practice and hostile

---

[6]A failure-to-promote claim is subject to a two-year limitations period if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer."  Smith-Cook v. Nat'l R.R. Passenger Corp., No. 05-0880, 2005 WL 3021101, at *7 (E.D. Pa. Nov. 10, 2005).  The Complaint provides insufficient information to determine whether the promotions plaintiffs sought would have created a "new and distinct relation" with Amtrak.  Patterson v. McLean Credit Union, 491 U.S. 164, 185 (1989).  Thus, on the present state of the record, the Court concludes that the four-year catch-all limitations period applies to those claims.  That ruling is without prejudice to defendant's right to argue otherwise at the summary judgment stage.

work environment became clear." (Pls.' Resp. 24.) Plaintiffs' argument is rejected. See, e.g.,
Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994) ("[A] claim
accrues in a federal cause of action upon awareness of actual injury, not upon awareness that this
injury constitutes a legal wrong.").

### 3.    Continuing Violation Doctrine[7]

Plaintiffs assert that the continuing violation doctrine permits them to recover for
unlawful actions that occurred even outside the limitations periods described above. Defendant
argues that the doctrine does not apply to plaintiffs' hostile work environment or discrimination
claims.

"Under the continuing violation doctrine, 'when a defendant's conduct is part of a
continuing practice, an action is timely so long as the last act evidencing the continuing practice
falls within the limitations period; in such an instance, the court will grant relief for the earlier
related acts that would otherwise be time barred.'" Snyder v. Baxter Healthcare, Inc., 393 F.
App'x 905, 909 (3d Cir. 2010) (quoting Brenner v. Local 514, United Bhd. of Carpenters &
Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)). The claim is timely if one event in a
"continuing practice" occurred within the limitations period.

The continuing violation doctrine applies prototypically to hostile work environment
claims. See, e.g., Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002).
Nonetheless, defendant argues that plaintiffs have failed to allege a "continuing practice" that
would permit aggregation of their hostile work environment claims. On the present state of the

---

[7]The continuing violation doctrine applies to claims under both Title VII and § 1981.
See, e.g., Velez v. QVC, Inc., 227 F. Supp. 2d 384, 404 (E.D. Pa. 2002).

record, that argument is rejected.  Because the Complaint does not specify when many of the actions that could contribute to a hostile work environment claim occurred, the Court cannot determine whether plaintiffs have alleged at least one "act evincing [a] continuing practice" of harassment that "falls within the limitations period."  The Court thus denies defendant's motion to dismiss plaintiffs' hostile work environment claims on timeliness grounds.  See W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 105 n.13 (3d Cir. 2010) ("For the defendant to prevail [on a limitations defense raised in a motion to dismiss], the plaintiff's tardiness in bringing the action must be apparent from the face of the complaint." (emphasis added)).

The continuing violation doctrine does not, however, apply to plaintiffs' discrimination claims.[8]  In Morgan, the Supreme Court held that "discrete acts of discrimination" cannot be aggregated under a continuing violation theory.  Id.  "[D]iscrete acts" are acts that are "individually actionable," including failure to promote, wrongful suspension, wrongful discipline, and denial of training.  O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006).  All of defendant's discrimination claims fit this category.  Plaintiffs thus may recover under a Title VII discrimination theory only for acts that occurred on or after October 23, 2009, which is 300 days before they filed their EEOC charge.  Plaintiffs may recover under a § 1981 theory only for acts that occurred within the four-year statute of limitations—acts on or after March 27, 2008.

### 4.        Conclusion—Timeliness of Title VII and § 1981 Claims

In summary, the Court grants Defendant's Motion to Dismiss with respect to Title VII

---

[8]Notwithstanding this ruling, plaintiffs may use prior discrete discriminatory acts "as background evidence in support of [their] timely claim[s]."  Morgan, 536 U.S. at 113.

-15-

discrimination claims that accrued prior to October 23, 2009.[9]  The Court grants Defendant's Motion to Dismiss with respect to § 1981 discrimination claims that accrued prior to March 27, 2008.  With respect to defendant's other timeliness arguments, the Motion to Dismiss is denied.

    C.    <u>Claims Under State Law</u>

        **1.    PHRA Claims**

Defendant argues that plaintiffs failed to exhaust their administrative remedies under the PHRA.  The EEOC and PHRC "have a work-sharing agreement for the initial investigation of discrimination charges."  <u>Kellam v. Independence Charter Sch.</u>, 735 F. Supp. 2d 248, 255 (E.D. Pa. 2010).  "That, however, does not mean that a plaintiff can initiate PHRC proceedings as required by the PHRA merely by filing with the EEOC."  <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 926 (3d Cir. 1997) (emphasis omitted).  Even after filing a charge with the EEOC, a plaintiff must take "separate action" to have his charge filed with the PHRC.  <u>Kellam</u>, 735 F. Supp. 2d at 255.

The Complaint states that plaintiffs filed administrative charges with the EEOC.  (Compl. ¶ 8.)  The Complaint does not, however, allege that they filed separate charges with the PHRC or that their EEOC charges were dual-filed.  In their response to the Motion to Dismiss, plaintiffs argue that "AMTRAK must be aware of the elemental fact of life that a filing with the EEOC is deemed a filing with the PHRC and that charges are dual filed as a matter of course."  (Pls.'

---

       [9]At this stage of the proceedings, the Court considers plaintiffs' Title VII discrimination claim arising from the July 2009 incident to be timely.  Plaintiffs allege they were disciplined in the "Spring of 2010."  (Compl. ¶ 11.)  The extrinsic documents defendant attached to its Motion to Dismiss purport to show otherwise, but as stated above, the Court does not consider those documents in ruling on the present motion.  The Court's ruling is without prejudice to defendant's right to present evidence later in the proceedings as to when plaintiffs were disciplined for the July 2009 incident.

Response 20.)  For the reasons explained in the preceding paragraph, plaintiffs are incorrect.  The Court thus dismisses plaintiffs' PHRA claims without prejudice to their right to file an Amended Complaint in the event that they filed or cross-filed a charge with the PHRC in a timely manner and timely filed their Complaint with respect to the PHRA claims.

### 2.      Wrongful Supervision Claim

Defendant argues that there is no cause of action for "wrongful supervision" under Pennsylvania law.  Plaintiffs agree, admitting "that perhaps this count should be recast as a respondeat superior claim."  (Pls.' Resp. 27.)  However, there is no independent cause of action for respondeat superior under Pennsylvania law.  See, e.g., Ford Motor Credit Co. LLC v. Maxwell, No. 10-1926, 2012 WL 1677248, at *2 (M.D. Pa. May 14, 2012).  The Court thus dismisses plaintiffs' wrongful supervision claim.

### 3.      Negligent Supervision Claim

Defendant argues that plaintiffs' negligent supervision claim is preempted by the PHRA.[10]  "[C]ommon law tort claims which are functionally brought under the same circumstances as a statutory claim are preempted by the relevant statute."  McGovern v. Jack D's, Inc., No. 03-5547, 2004 WL 228667, at *6 (E.D. Pa. Feb. 3, 2004).  The PHRA preempts negligent supervision claims if a plaintiff relies on "the same set of facts" to support both claims.  Id. at *7; see also, e.g., Watkins v. Rite Aid Corp., No. 06-299, 2006 WL 2085992, at *4 (M.D. Pa. July 25, 2006).

In this case, plaintiffs' negligent supervision and PHRA claims arise from a single set of

---

[10]Defendant also argues that the claim is preempted by the Railway Labor Act.  Because of the Court's ruling on PHRA preemption, the Court does not reach that issue.

facts.  To support the negligent supervision claim, plaintiffs allege that defendant "fail[ed] to exercise ordinary care to prevent intentional harm to Plaintiffs by management."  The facts that underlie that assertion are the same as those that support the underlying allegations of racial discrimination.  The Court thus dismisses the negligent supervision claim.

## V.    CONCLUSION

Defendant's Motion to Dismiss Plaintiffs' Complaint is granted in part and denied in part. The Motion to Dismiss is granted with respect to (1) plaintiffs' retaliation claims under Title VII and § 1981, (2) any Title VII discrimination claims accruing before October 23, 2009, (3) any § 1981 discrimination claims accruing before March 27, 2008, (4) plaintiffs' claims under the PHRA, (5) plaintiffs' wrongful supervision claim, and (6) plaintiffs' negligent supervision claim. The Motion to Dismiss is denied in all other respects.

Remaining in the case are the following claims: (1) plaintiffs' hostile work environment claims under Title VII and § 1981, (2) Title VII discrimination claims accruing on or after October 23, 2009, (3) § 1981 discrimination claims accruing on or after March 27, 2008, and (4) plaintiffs' disparate impact claims under Title VII.

The Court's rulings are without prejudice to defendant's right to argue, based on evidence adduced later in the proceedings, that (1) the four-year federal catch-all statute of limitations is inapplicable to some or all of plaintiffs' § 1981 claims and (2) plaintiffs' discrimination claims arising from the July 2009 incident are untimely.  The Court's rulings are also without prejudice to plaintiffs' right to file an Amended Complaint consistent with this Memorandum if warranted by the facts.

An appropriate Order follows.